### PILCHER v. E. R. PORTER CO. et al.
(4 Div. 946.)

(Supreme Court of Alabama. June 15, 1922. Rehearing Denied Oct. 12, 1922.)

1. **Mortgages ⬥151(3)—Lien for materials in building on land subject to incumbrance is subordinate thereto as to land, but superior as to building.**

Where a new building is erected on land already subject to a mortgage or other incumbrance, a mechanics' or materialman's lien is subordinate to such incumbrance as to the land, but superior thereto as to the building, though the action at law for the enforcement of the lien and the judgment thereon is against the entire property, or either the mortgage or lien has been foreclosed, and the property bought in at the sale, if lienor, in the former case, or mortgagee, in the latter, was not a party to the suit or foreclosure proceeding.

2. **Mechanics' liens ⬥260(1)—Suit to determine priorities between lienor and prior incumbrancer of land as to added improvement need not be commenced within six months after maturity of debt.**

The enforcement of a mechanics' or materialman's lien against a building erected on land already subject to a mortgage or other incumbrance by a bill in equity which does not seek the subjection thereto of any property, whether land or improvements, originally covered by the mortgage, but merely the determination of priorities as to the added improvement and its

separation from the land, is not such a suit to enforce the lien as, under Code 1907, § 4777, must be commenced within six months after maturity of the indebtedness, though the prior incumbrancer was not made a party to the proceeding by which the lien was established, and the action at law for the enforcement thereof and the judgment thereon is against the entire property, or either the mortgage or lien has been foreclosed and the property bought in at the sale, if lienor, in the former case, or mortgagee, in the latter, was not a party to the suit or foreclosure proceeding.

3. Mortgages ⊕⟹151(3) — Prior mortgagee's lien is superior to mechanics' or materialmen's lien for repairs or mere betterment as to original mortgaged property, but subordinate as to what lienor added.

Where an improvement on a building erected on land already subject to a mortgage or other incumbrance is a mere betterment, or repairs are made thereon, and the owner has only a qualified right, mortgagee's lien is superior and prior to the subsequent mechanic's or materialman's lien as to the property covered by the mortgage before such lien attached, but subordinate thereto as to what lienor added, and so the lien of the mechanic or materialman is upon the whole property, but subordinate to the mortgage as to the property covered by the mortgage when his lien attached.

4. Mechanics' liens ⊕⟹245(2) — Lien for repairs or mere betterment of building on land covered by prior mortgage cannot be protected in court of law.

The priority of a mechanics' or materialmen's lien for repairs or improvements constituting mere betterments of buildings erected on land covered by a prior mortgage cannot be protected in a court of law, but is a matter of equitable jurisdiction exclusively.

5. Mechanics' liens ⊕⟹260(1) — Suit to enforce lien for repairs or mere betterment of buildings on mortgaged land must be commenced within six months after maturity of debt.

A suit to enforce a materialman's lien for repairs or improvements constituting mere betterments of buildings erected on mortgaged land, being a primary proceeding to establish a lien on property to which the mortgage attached in its inception, and on which mortgagee relied as security, and affecting his interests by a premature and compulsory foreclosure of his claim if the security has been enhanced in value, must be commenced, under Code 1907, § 4777, within six months after maturity of the entire indebtedness.

6. Mechanics' lien ⊕⟹260(1) — Cross-bill in equity for determination of priorities between lien on buildings and prior mortgage on land held not within six-month statute of limitations.

In a mortgagee's suit to enjoin a sale of land to enforce the payment of subsequent liens for materials used "in finishing up or fitting out" buildings thereon which "have been practically completed," a cross-bill in equity for the determination of priorities merely, and separation of interests, if necessary, averring that the materials were used for the "erection" of such buildings, was not within the six-month statute, because it did not show that any of the buildings were constructed wholly with the materials furnished; each lienor contributing to the building having priority as to it in the order of his contribution, no matter at what stage in the progress thereof the materials were furnished or how small a proportion they were of all the materials used.

7. Mechanics' liens ⊕⟹273 — Cross-bill averring furnishing of materials for erection of buildings on mortgaged land held not demurrable for uncertainty as to nature and extent of lien.

In a mortgagee's suit to enjoin the sale of the mortgaged land to enforce payment of liens for materials used in buildings erected thereon, a cross-bill averring that materials were furnished to be used for the erection of certain buildings on the land held not demurrable on the ground of uncertainty as to the nature and extent of the lien claimed; the only lien asserted being against the buildings alone.

8. Mechanics' liens ⊕⟹260(1) — Lienors held not guilty of laches in assertion of priority of materialman's lien on buildings over mortgage, in absence of plea or answer so alleging.

Lienors averring in a cross-bill, in a prior mortgagee's suit to enjoin a sale of land to enforce payment of liens for materials used in buildings erected thereon, that mortgagor began the erection thereof during the early part of, and prior to, July 2, 1914, and that materials were furnished by them at intervals from July 2 until and including August 31, 1914, held not guilty of laches in the assertion and enforcement of their priority right as to the buildings, though four years had elapsed since the maturity of their claim, in the absence of a plea or answer alleging circumstances which would so charge them; there being nothing on the face of the cross-bill indicating such laches.

9. Mechanics' liens ⊕⟹273 — Bill averring that materials were furnished for, and went into, buildings held not demurrable for failure to describe portions erected therewith.

In a mortgagee's suit to enjoin the sale of the mortgaged land to enforce payment of materialmen's liens, a cross-bill alleging that the materials were furnished for, and went into, buildings erected on the land held not demurrable as not describing with reasonable certainty what portions of the buildings were improved, erected, or constructed therewith; it being enough that they were furnished for, and entered into the structure of the buildings before final completion.

10. Appeal and error ⊕⟹863 — Questions not raised on demurrer not considered on appeal from decree overruling it.

On appeal from a decree overruling a demurrer to a cross-bill, questions not raised by the demurrer will not be considered.

Appeal from Circuit Court, Houston County; H. A. Pearce, Judge.

Suit by Mrs. T. T. Pilcher against the E. R. Porter Company and others, to enjoin

---

⊕⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

a sale of land to enforce the payment of liens. From a decree overruling demurrers to a cross-bill, complainant appeals. Affirmed.

The bill alleges that the complainant is the owner of certain described lands in Houston county, that respondents claim some right in or incumbrance thereon, and that no suit is pending to enforce or test the validity of such right or incumbrance.

It is alleged that in March, 1914, complainant and her husband, W. C. Pilcher, executed a mortgage on the land in question to Marion F. Damon; that in November, 1914, complainant and her husband and H. C. Pilcher executed a mortgage on the lands in question and other lands to B. R. Pilcher, G. W. Pilcher, and J. M. Pilcher; that in November, 1915, W. C. Pilcher and H. C. Pilcher filed voluntary petition in bankruptcy, thereafter being adjudged bankrupt; that the trustee in bankruptcy sold the equity of redemption under said two mortgages to Marion F. Damon; 'that thereafter complainant purchased and received transfer of said mortgages, and received conveyance of the equity of redemption under each;' that in March, 1920, complainant foreclosed said mortgages, taking title in herself. It is averred that prior to July 2, 1914, complainant's husband began the erection of certain buildings on the lands in question, borrowing money for that purpose from Damon and the Pilchers, executing as security therefor the mortgages aforesaid; that, after said buildings and improvements had been practically completed, about July 2, 1914, E. R. Porter Company began to advance to W. C. Pilcher materials to be used in finishing up said buildings. It is averred that in October, 1914, E. R. Porter Company filed sworn statement claiming materialman's lien in the office of the probate judge; that in February, 1915, E. R. Porter Company filed suits in the circuit court, recovering judgments in May, 1915; that Dothan Grocery Company filed suit against W. C. Pilcher and H. C. Pilcher, recovering judgment in May, 1915; that said three judgments were recorded shortly thereafter by the plaintiffs therein, and that E. R. Porter Company, in August, 1920, caused a writ of venditioni exponas and a writ of fieri facias to issue and be placed in the hands of A. H. May, the sheriff of said county, who, on August 11, 1920 levied said writs on the lands in question, and gave notice that on September 13, 1920, he would sell said land under said writs.

The prayer is that respondents be enjoined from making sale of the lands under said writs, and that respondents' claims be decreed subordinate to complainant's rights, and declared clouds upon her title.

Respondent E. R. Porter Company filed answer and cross-bill, denying generally the allegations of the original bill, averring the superiority of its lien to the claim or right of complainant as to the buildings and improvements, and praying a decree requiring complainant to pay the amount due, or, failing, that respondent be authorized to remove said buildings and improvements.

Complainant demurred to the cross-bill, which was overruled, and she appeals.

Sollie & Sollie, of Ozark, for appellant.

The jurisdiction to decree and establish a materialman's lien appertains solely to courts of equity. 94 Ala. 240, 10 South. 157, 14 L. R. A. 305; 191 Ala. 238, 68 South. 43; 202 Ala. 157, 79 South. 641; 203 Ala. 206, 82 South. 455; Code 1907, § 4764. Appellees, not having brought their suit in equity within six months after the alleged accrual of the demand, must be deemed to have lost the right to bring it. Code 1907, § 4777; 95 Ala. 608, 10 South. 834; 203 Ala. 93, 82 South. 107; 204 Ala. 439, 85 South. 709. A materialman's lien, for materials furnished in the repair of an existing building, there being an outstanding mortgage on the lot, extends only to the increase in value of the building, due to the work done and materials furnished. 191 Ala. 238, 68 South. 43; 94 Ala. 240, 10 South. 157, 14 L. R. A. 305.

Farmer, Merrill & Farmer, of Dothan, for appellees.

As between Damon, or his assignee, and the appellee, the buildings did not become a part of the realty; and appellant holds a mortgage superior to appellee on the naked lots, and appellee holds a prior lien on the buildings. 203 Ala. 93, 82 South. 107.

SOMERVILLE, J. With respect to the relative rights of lienors and prior mortgagees, under sections 4754 and 4755 of the Code, declaring and defining the liens of mechanics and materialmen, and the remedies for their enforcement, the following propositions seem to be clearly settled by our decisions:

[1] 1. Where a new building or structure is erected on land which is already subject to a mortgage or other incumbrance, as to the land, the lien is subordinate to the prior incumbrance, but, as to the building or structure, the lien is superior to such incumbrance; the theory being that, so far as the lienor is concerned, the building or structure does not become a part of the land, is not affected by any prior incumbrance on the land, and "may be sold and removed without affecting the mortgage security." Turner v. Robbins, 78 Ala. 592, 595; Wimberly v. Mayberry, 94 Ala. 240, 10 South. 157, 14 L. R. A. 205; Vesuvius Lbr. Co. v. Ala., etc., Co., 203 Ala. 93, 95, 82 South. 107.

[2] 2. In such a case, the enforcement of the lien already seasonably established in an action at law or otherwise, though the prior incumbrancer were not made a party thereto,

against such building or structure, by a bill in equity, which does not seek the subjection thereto of any property, land or improvements, which was originally covered by the mortgage, but merely the determination of priorities between the lienor and the prior incumbrancer of the land as to the added improvement, and its separation from the land, is not such a suit for the enforcement of the lien as, under section 4777 of the Code must be commenced "within six months after the maturity of the entire indebtedness secured thereby." Vesuvius Lbr. Co. v. Ala., etc., Co., 203 Ala. 93, 82 South. 107; Id., 204 Ala. 439, 85 South. 709; Jefferson County Sav. Bk. v. Ben F. Barbour Co., 191 Ala. 238, 247, 68 South. 43.

3. The principles just above stated are not affected in any way by the circumstance that the action at law for the enforcement of the lien, and the judgment thereon, is against the entire property of the defendant, both the land and improvement (Vesuvius Lbr. Co. v. Ala., etc., Co., supra; B'ham B. & L. Ass'n v. May, etc., Co., 99 Ala. 276, 13 South. 612), nor by the fact that either the mortgage or the statutory lien has been foreclosed, and the property bought in at the sale (Vesuvius Lbr. Co. v. Ala., etc., Co., supra; B'ham B. & L. Ass'n v. May, etc., Co., supra; Wimberly v. Mayberry, supra; Magnolia Land Co. v. Malone Inv. Co., 202 Ala. 157, 158, 79 South. 641). This assumes, of course, that the lienor, in the one case, or the mortgagee, in the other, was not made a party to the suit or foreclosure proceeding.

[3] 4. But, "where the improvement is a mere betterment, or where repairs are made, upon a building or improvement upon which there is a valid lien, and the owner has only a qualified right, it would be unjust and inequitable in many cases * * * to enforce the lien and give it priority on the entire building or improvement"; and hence "the mortgagee's lien is superior and prior as to the property covered by the mortgage before the mechanic's or materialman's lien attached, and subordinate to the lien given to the mechanic or materialman, for what-he added; and so the lien of the mechanic or materialman is upon the whole property, but subordinate to the mortgage as to the property covered by the mortgage when his lien attached." Wimberly v. Mayberry, supra, 94 Ala. 248, 249, 10 South. 160 (14 L. R. A. 205); Jefferson Co. Sav. Bk. v. Ben F. Barbour, etc., Co., supra.

[4] 5. Where the statutory lien is of the character just above stated, its priority "cannot be adjusted and protected in a court of law," but is a matter of equitable jurisdiction exclusively. Wimberly v. Mayberry, supra; Jefferson County Sav. Bk. v. Ben F. Barbour, etc., Co., supra.

[5] 6. In such a case, the suit being a primary proceeding for the establishment of a lien upon the property of the mortgagee —property to which his mortgage attached in its inception, and upon which he relied as security for its satisfaction—and affecting his interests by a premature and compulsory foreclosure of his claim if the security has been enhanced in value, it is held to be such a suit as the statute (Code, § 4777) requires to be commenced "within six months after the maturity of the entire indebtedness secured thereby." Jefferson County Sav. Bk. v. Ben F. Barbour Co., supra; Vesuvius Lbr. Co. v. Ala., etc., Co., supra.

The foregoing principles and distinctions have been clearly enunciated, and must be regarded as settled. The point of difference between counsel for the respective parties in interest is, as we understand it, not with respect to the principles above reviewed, but as to their application to the facts of this case.

[6] The original bill of complaint, in the sixth paragraph, alleges that W. C. Pilcher, the original owner and mortgagor, "borrowed money from Damon and the Pilchers, and used it in erecting the buildings which are on the lands in question, and that, after said buildings and improvements had been practically completed, appellees began to advance to W. C. Pilcher materials to be used in finishing up or fitting out said buildings theretofore erected on said lands, and which in part were used in and about finishing up said buildings."

The answer and cross-bill contains the following statement:

"In answer to the sixth paragraph of the bill respondents and each of them separately and severally say that they admit that during the early part and prior to the 2d day of July, 1914, the said W. G. Pilcher began the erection of certain buildings upon said land described in the second paragraph of the bill. They deny that, after said buildings and improvements had been practically completed, and on or about the 2d day of July, 1914, respondents began to advance to W. C. Pilcher certain materials to be used by him in finishing up or fitting out said buildings theretofore erected upon said lands, and which in part were used in and about the finishing up of said buildings. They admit that materials were furnished by them from July 2d, on various days, at intervals thereafter, until and including the 31st day of August, 1914; and they aver that said materials so furnished, for said purpose, were used by W. C. Pilcher for the erection upon said land, and that the same was furnished or advanced by these respondents under and by virtue of a contract and agreement between them and W. C. Pilcher."

The chief point made by the demurrer to the cross-bill, and urged in brief, is that the cross-bill was not filed within six months after the maturity of the indebtedness secured by the lien; and this contention is based upon the theory that the cross-bill does not show that any of the buildings in question were constructed wholly with the mate-

rials alleged to have been furnished to the owner, Pilcher, and hence must be taken as admitting the allegation of the original bill that the materials were furnished for the completion or mere finishing of buildings already practically completed, which, as the argument runs, would give a prior lien, not on the buildings themselves, but only on the enhanced value of the entire property, for the enforcement of which a bill in equity must be filed within six months, as held in Jefferson County Sav. Bk. v. Ben F. Barbour Co., 191 Ala. 238, 68 South. 43.

This ground of the demurrer is very clearly without merit. If, as the cross-bill alleges, the materials were furnished for and used in the erection of new buildings, which were not a part of the security of the mortgage at its inception, it is wholly immaterial at what stage in the progress of the building such materials were furnished, nor how small a proportion they were of all the materials used in the buildings. The statute makes no such discriminations, but gives the lien equally to him who furnishes the paint for finishing, the brick or stone for foundations, or the lumber or other materials for the body of the building, in whatever quantity. There may be questions of priority as between the several lienors who contribute to the building, but, so far as the prior mortgagee of the lot is concerned, each of the lienors, from first to last in the order of their contribution, has priority as to the building.

Unquestionably, under the allegations of the cross-bill, the materials furnished by appellees were for use, and were used, in new buildings of which they formed a part, and were in no sense for repairs or betterments. And, as we have already pointed out, the statute preserves the separate identity of new structures in favor of lienors in such wise that, from inception to completion, they never become subject to the lien of the mortgage until the lienor's claims are discharged. The result is that the lien asserted by the cross-bill, against the buildings only, was seasonably and primarily established by the action at law against the owner, W. C. Pilcher, and the present bill in equity against the prior mortgagee of the lot for the determination of priorities merely, and the separation of interests, if need be, an equitable jurisdiction independent of the establishment of the lien, does not fall within the purview of the statute of limitations of six months.

[7] The only lien asserted by the cross-bill is against the buildings for which cross-complainants furnished materials, and the relief sought is aimed at nothing else: It leaves no uncertainty as to the nature and extent of the lien claimed, and the third ground of demurrer is therefore not well taken.

[8] From the face of the cross-bill it cannot be discerned that the lienors have been guilty of laches in the assertion and enforcement of their priority right as to the buildings, though four years have elapsed since the maturity of the lienors' claim. If there are any circumstances which could so charge them, they must be availed of by plea or answer. Fowler v. Ala. I. & S. Co., 164 Ala. 414, 51 South. 393, headnote 9. The ground of demurrer, as for laches shown by the cross-bill, cannot be sustained.

[9] Another objection raised by the demurrer is that the cross-bill "does not describe or set forth with reasonable certainty what portions of said buildings, or any of them, were improved, erected or constructed with or by means of said materials, or any of them." The clear allegation is that the materials were furnished for the buildings erected, and went into those buildings. It is wholly immaterial what portions of the buildings in question were constructed of the materials furnished. It is enough that they were furnished for and entered into the buildings erected, as a part of their structure before their final completion.

[10] Whether or not, where there is a single contract for materials to be used in the construction of more than one building, the lienor must show what amount of the materials, or what particular item, went into each building, and thus show and rely upon separate liens, each restricted to and commensurate with the value of the materials respectively used in each, is a question not raised by the demurrer, and therefore not proper for present consideration. See, however, Cocciola v. Wood-Dickerson Co., 136 Ala. 532, 33 South. 856; 27 Cyc. 128–130.

Upon a very thorough consideration of the pleadings and of the arguments of counsel, our judgment is that there is equity in the cross-bill, and that it is not subject to any of the special grounds of demurrer assigned.

Let the decree of the circuit court be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.